IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY A. WALKER, | : | CIVIL ACTION NO. **4:CV-01-1644** |
| | : | |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MICHAEL ZENK, Warden, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I. Background.

Plaintiff, Jeffrey A. Walker, formerly an inmate incarcerated at the Federal Correctional Institution at Allenwood ("FCI-Allenwood"), filed this filed this *Bivens*[1] action pursuant to 28 U.S.C. §1331, on August 24, 2001. (Doc. 1).[2]  Plaintiff alleged in his Complaint that nine (9) Bureau of Prisons ("BOP") employees[3] violated several of his Constitutional rights.

---

1. *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971).  Plaintiff's action falls within 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." (Emphasis added).
     This is a *Bivens* action as Plaintiff seeks monetary damages from federal officials for alleged violations of his Constitutional rights. Doc. 1, p. 13.
     We also find that, insofar as Plaintiff is complaining about events which occurred at a prison located in the Middle District of Pennsylvania, *i.e.* FCI-Allenwood, White Deer, Pennsylvania, by Middle District of Pennsylvania Defendants, venue of such claims is proper in this Court despite Plaintiff's current incarceration at FCI-Fairton, New Jersey.

2. Plaintiff is presently an inmate confined at FCI-Fairton, New Jersey.    (Doc. 178, p. 1, n. 1).

3.  We note that the number of Defendants named in Plaintiff's August 24, 2001 Complaint was nine (9). (Doc. 1).

On June 2, 2003, the District Court granted Defendants' Motion for Reconsideration of the Court's April 1, 2003 Order, which denied Defendants' Motion to Dismiss, and granted Defendants' Motion to Dismiss the Plaintiff's Complaint without prejudice since it found that all of Plaintiff's claims were not exhausted.  Plaintiff filed a Motion for Reconsideration of the Court's June 2, 2003 Order, which was denied on July 31, 2003.  The Court essentially found that since Plaintiff did not exhaust all of his claims, his entire case should be dismissed without prejudice.[4]

Subsequently, Plaintiff appealed the District Court's July 2003 Order to the United States Court of Appeals for the Third Circuit, Appeal No. 03-3298.  The Third Circuit issued an Order on February 15, 2007, vacating the District Court's July 31, 2003 Order, and holding that only Plaintiff's unexhausted claims should have been dismissed and that his two exhausted claims should have been considered by the District Court.  The Third Circuit Court then remanded the case to the District Court, and the District Court remanded the case to the undersigned.  (Docs. 124 and 125).  An Order was issued directing Defendants to respond to Plaintiff's two unexhausted claims, namely his First Amendment confiscation of legal materials claim and his Fourteenth Amendment due process claim regarding his March 22, 2001 disciplinary hearing.   (Doc. 125).

Defendants requested additional time to respond to Plaintiff's two remaining exhausted claims, and, on March 20, 2007, the Court granted the request and afforded Defendants additional time to May 18, 2007.  (Doc. 131).

---

4. As discussed below, only two of Plaintiff's claims were exhausted, *i.e.*, his Fourteenth Amendment due process claim regarding his March 22, 2001 disciplinary hearing, and his First Amendment denial of access to courts claim regarding the January 2001 confiscation of his legal materials.

On March 29, 2007, Plaintiff filed a Motion for Writ of Attachment pursuant to Fed. R. Civ. P. 64, and a support Brief with attached exhibits (A-J).  (Docs. 132 and 133).  The Court directed Defendants to respond to Plaintiff's Motion, and they did so on April 17, 2007.  (Doc. 138). Plaintiff requested the Court to issue pre-judgement writs of attachment against each of the eleven (11) Defendants he indicated were named in his Complaint[5], and he requested the Court to issue a writ attaching $4 hundred million against each Defendant.  (Doc. 133, pp. 1-2).  On May 1, 2007, we issued an Order denying Plaintiff's Motion for Writ of Attachment .  (Doc. 139).  We also denied Plaintiff's subsequent Motion for Reconsideration regarding the stated Order.  (Doc. 146).

On May 7, 2007, Plaintiff filed a Motion to Amend his Complaint, along with a proposed amended pleading.  (Doc. 143).  On May 25, 2007, Defendants filed their Brief in opposition to Plaintiff 's Motion to Amend.  Plaintiff's Motion to Amend was denied on June 19, 2007.  (Doc. 161).[6]  On July 9, 2007, Plaintiff filed an appeal to the District Court of our June 19, 2007 Order denying his Motion to Amend his Complaint.  (Doc. 164).   On July 7, 2007, the District Court denied Plaintiff's appeal of our stated Order.  (Doc. 168).[7]

---

5. As noted above, Plaintiff named only nine Defendants in his original Complaint.

6. On May 18, 2007, Defendants filed a second Motion for an Extension of Time to respond to Plaintiff's original Complaint until ten days after the Court ruled upon Plaintiff's Motion to Amend his Complaint.  The Court granted Defendants' stated Motion on May 21, 2007. (Doc. 151).

7.  The District Court's Memorandum and Order (Doc. 168) was docketed on July 16, 2007, but it was dated July 17, 2007.

On May 17, 2007, Plaintiff filed his first Motion for Summary Judgment (Doc. 147), a support Brief with Exhibits (Doc. 148), and a Statement of Material Facts ("SMF"). (Doc. 149). On June 4, 2007, Plaintiff filed a Notice for Default Entry pursuant to Fed. R. Civ. P. 55(a), which was docketed as a Motion for Entry of Default (Doc. 154). Also on June 4, 2007, Plaintiff filed a Motion for Default Judgment (Doc. 155) and a support Brief (Doc. 156). On June 4, 2007, Defendants filed their Brief in opposition to Plaintiff's Summary Judgment Motion. (Doc. 157). On July 8, 2007, we issued a Report and Recommendation and recommended that Plaintiff's Motion for Summary Judgment (Doc. 147) be denied without prejudice as premature. We also recommended that Plaintiff's Notice of Entry of Default, docketed as a Motion (Doc. 154), be denied. Further, we recommended that Plaintiff's Motion for Default Judgment (Doc. 155) be denied. (Doc. 159). Plaintiff filed Objections to our Report and Recommendation, and on July 3, 2007, the District Court adopted our Report and Recommendation. (Doc. 162).

Subsequently, four Motions were filed by the parties, namely, Defendants' Motion to Dismiss and for Summary Judgment filed on July 3, 2007 **(Doc. 163)**, Plaintiff's second Summary Judgment Motion filed on July 12, 2007 **(Doc. 165)**, Plaintiff's August 6, 2007, Motion to Alter or Amend Judgment (Doc. 172) regarding the District Court's stated July 17, 2007 Memorandum and Order (Doc. 168),[8] and Plaintiff's August 30, 2007 "Motion to File Jointer (sic) of Persons Needed

---

8. Since Plaintiff seeks the District Court to alter or amend its July 17, 2007 Memorandum and Order (Doc. 168) in his August 6, 2007 Motion to Alter or Amend Judgment (Doc. 172 and Doc. 173, p. 2, ¶ 2.) filed pursuant to Fed. R. Civ. P. 59(e), the undersigned could not decide this Motion. On November 6, 2007, the District Court issued a Memorandum and Order in which Plaintiff's Motion to Alter or Amend Judgment (Doc. 172) filed pursuant to Fed. R. Civ. P. 59(e) was denied. (Doc. 183).

For Just Adjudication Pursuant to [Fed. R. Civ. P.] 19(a)" **(Doc. 177).** Plaintiff again seeks to join as Defendants in this case Cindy Bryan, Administrative Remedy Coordinator, and Harrell Watts, Administrator [BOP] Central Office.

The three stated Motions which we consider herein (Docs. 163, 165 and 177) have been briefed and are ripe for disposition.[9]

## II. Motion to Dismiss Standard.

When evaluating a motion to dismiss, the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988). A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

---

9. As noted above, Plaintiff's August 6, 2007 Motion to Alter or Amend Judgment (Doc. 172) was denied by the District Court's November 6, 2007 Memorandum and Order (Doc. 183).

### III.   Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact.  Fed.R.Civ.P. 56(c).  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party."  *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant.  *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983).  Upon such a showing, the burden shifts to the nonmoving party.  *Id*.  The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988).  In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor.  *Id., quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038 ( 1977).

Moreover, the Third Circuit has recently indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted).

We will first consider Plaintiff's Rule 19(a) Motion to Join two additional Defendants.

**IV. Discussion.**

1.   ***Plaintiff's August 30, 2007 "Motion to File Jointer (sic) of Persons Needed For Just Adjudication Pursuant to [Fed. R. Civ. P.] 19(a)" (Doc. 177)***

As stated, Plaintiff seeks (once again) to join two additional Defendants in this case, Cindy Bryan, Administrative Remedy Coordinator, and Harrell Watts, Administrator [BOP] Central Office. Plaintiff states that he wants to join the stated two BOP officials to name them as Defendants in this case "in their individual and Official Capacity (sic)." (Doc. 177). Plaintiff states that Bryan and Watts were unknown to him when he filed his §1331 civil rights action on August 24, 2001, and that he now seeks to join Bryan "as a Defendant who did conspired (sic) with the remanding (sic) known and unknown Defendants to commit Fraud against Plaintiff, by entering into the Central computer that Plaintiffs (sic) BP-9 has been withdrawn, willfully blocking and stifling the BP-9 process without consent or without any proof of a withdrawal." (Doc. 178, p. 6). Plaintiff states that Bryan, in bad faith, entered on the computer that he withdrew his BP-9. Plaintiff states that he requests to join Watts, BOP Administrator of National Inmate Appeals, as a Defendant because he submitted a BP-11 Administrative remedy appeal and Watts rejected it for filing it at the wrong

level, knowing that Plaintiff filed his BP-9 at the prison on January 16, 2001.  (*Id.*, pp. 6-7).

Plaintiff concludes that Watts and Bryan deprived him of his First Amendment right to access to the

Court.  (*Id.*, p. 7).[10]

On September 14, 2007, Defendants filed their opposition Brief to Plaintiff's Rule 19(a)

Joinder Motion.  (Doc. 181).  On October 1, 2007, Plaintiff filed a Reply Brief in support of his Rule

19(a) Motion to Join Bryan and Watts as Defendants, with several Exhibit attached.  (Doc. 182).

The Third Circuit Court of Appeals in *Guthrie Clinic, Ltd. v. Travelers Indem. Co.*, 2004 WL

1465688, at *2 (3d Cir. 2004), a case on appeal from a decision of this Court granting the

Defendant's motion to dismiss under Rule 19 for failure to join an indispensable party, stated as

follows:

> A Rule 19 inquiry is bifurcated. [FN4] First, under Rule 19(a), a district
> court considers whether a party is necessary to an action.  If a party is
> deemed necessary, then joinder must occur if feasible.  If, as here,
> the addition of a necessary party would divest a court of subject
> matter jurisdiction, then a court must determine whether in "equity
> and good conscience" the action should proceed without that party,
> or whether the action should be dismissed, "the absent person being
> thus regarded as indispensable."  Accordingly, a finding of
> indispensability under Rule 19(b) necessitates dismissal for lack of
> subject matter jurisdiction.
>
> FN4.  Rule 19 provides in part that:
>
> (a) Persons to be Joined if Feasible.  A person who is subject to
> service of process and whose joinder will not deprive the court of
> jurisdiction over the subject matter of the action shall be joined
> as a party in the action if

---

10.  Plaintiff's First Amendment claim he attempts to now raise against Bryan and Watts is not
the same First Amendment claim that was found to be exhausted and is remaining in this case.

(1) in the person's absence complete relief cannot be accorded among those already parties, or

(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may

(i) as a practical matter impair or impede the person's ability to protect that interest or

(ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

(b) Determination by the Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19.

Thus, the Court must first consider whether a party is necessary. If the party is necessary, then joinder must occur if feasible. We disagree with Plaintiff that Bryan and Watts are necessary with respect to his two remaining claims in this case, and we disagree with Plaintiff that he cannot

9

obtain complete relief without them. (Doc. 182, p. 5). We concur with Defendants, and again find that the joinder of Bryan and Watts as Defendants in this case is not necessary, since Plaintiff can obtain complete relief with respect to his two remaining claims in this case without their joinder. (Doc. 181, p. 5). We also concur with Defendants, and again find (*See* Doc. 161, p. 4) that Bryan and Watts are not alleged to have been personally involved in Plaintiff's two remaining claims in this case. (Doc. 181, p. 5). Further, Defendants correctly state that "both this Court and the Third Circuit have already dismissed the claims which Walker is attempting to revisit [in his Doc. 177 Motion], finding that those claims were unexhausted, and they are still subject to dismissal based on the previous findings of these courts." (Doc. 181, pp. 6-7). Plaintiff's action has only been reopened with respect to his two exhausted claims (*i.e.* his First Amendment claim that his legal materials were confiscated during a January 26, 2001 shakedown, and his Fourteenth Amendment due process claim regarding his March 22, 2001 disciplinary hearing Doc. 162, p. 2), and he continues to try to re-assert his unexhausted claims, which have been dismissed, into this case. In fact, the District Court, in its recent November 6, 2007 Memorandum and Order (Doc. 183, p. 4), again stated that all of Plaintiff 's unexhausted claims were dismissed. Plaintiff's Rule 19(a) Motion is simply another attempt to re-assert his unexhausted claims back into this case.

Therefore, we again find that Bryan and Watts are not necessary parties in this case. We also agree with Defendants that Plaintiff is basically now trying to rehash his Motion to Amend his Complaint, which was already denied by this Court and by the District Court.[11]

---

11. As noted above, Plaintiff's August 6, 2007 Motion to Alter or Amend Judgment (Doc. 172) pertained to the District Court's July 17, 2007 Memorandum and Order (Doc. 168) affirming our Order denying his Motion to Amend his Complaint. As Defendants correctly state in their

Defendants also correctly argue that Plaintiff has already unsuccessfully tried to amend his Complaint to add Bryan and Watts as Defendants pursuant to Rule 15(a).  (Doc. 181, p. 6 and Doc. 143).  As Defendants correctly state, and as indicated above, this Court denied Plaintiff's Motion to Amend (Doc. 161).  Further, we agree with Defendants that Plaintiff is again trying re-assert his dismissed unexhausted claims and that  to allow him to now do so would be extremely prejudicial to Defendants.  (*Id.*, pp. 6-7).

Moreover, Plaintiff has no Constitutional right with respect to a grievance procedure, and the processing of his Administrative remedies and the responses to them by Bryan and Watts do not state a cognizable §1331 claim.  The law is well-settled that there is no constitutional right to a grievance procedure.  *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 137-138 (1977).  This very Court has also recognized that grievance procedures are not constitutionally mandated.  *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential).  Even if the prison provides for a grievance procedure, as the BOP does, violations of those procedures do not amount to a civil rights cause of action.  *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd 74 F. 3d 1226 (3d Cir. 1995).  *See also Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa. (Even "[i]f the state elects to provide a grievance mechanism, violations of its

---

brief in opposition to Plaintiff's August 6, 2007 Motion to Alter or Amend Judgment (Doc. 172), "Walker filed a Rule 59(e) motion to alter or amend, seeking reconsideration of the [District Court's] July 17, 2007 Order, which construed Plaintiff's motion styled as objections to our June 19, 2007 Order to be an appeal of our Order.  (Doc. 176, p. 4).  The District Court's November 6, 2007 Memorandum and Order (Doc. 183) denied Plaintiff's Rule 59(e) Motion.

procedures do not ... give rise to a [constitutional] claim.") (citations omitted).  Thus, even if the prison official allegedly failed to process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra*.

We also find that Plaintiff's vague conspiracy claim (Doc. 178, p. 6 and Doc. 182, p. 4, n. 4) against Bryan, *i.e.* she conspired to commit fraud by indicating on the Sentry computer system that Plaintiff's BP-9 was withdrawn, fails to state a Constitutional claim.  The Third Circuit in *Jones v. Maher*, Appeal No. 04-3993 (3d Cir. 2005), slip op. p. 5, stated that broad and conclusory allegations in a conspiracy claim are insufficient to state a viable claim.  (Citation omitted). *See also Flanagan v. Shively*, 783 F. Supp. 922, 928-29 (M.D. Pa. 1992), *aff'd.* 980 F. 2d 722 (3d Cir. 1992), *cert. denied* 510 U.S. 829 (1993).

Also, as stated above, Plaintiff attempts to join Bryan and Watts, both federal officials, as Defendants, and, if joined, he seeks monetary damages against them (and all Defendants) in both their individual and official capacities  (Doc. 177 and Doc. 1, p. 13).  We find, as previously noted (Doc. 161, p. 3, n. 3), that Plaintiff cannot seek money damages from these two individuals (and from all Defendants) in their official capacities.  Thus, to the extent that Plaintiff's *Bivens* action is against any federal prison official in his official capacity and he seeks monetary damages, it is basically a claim against the United States.[12]  In Plaintiff's August 24, 2001 Complaint, the pleading

---

12.  As this Court stated in *Arrington v. Inch*, 2006 WL 860961, * 4 (M.D. Pa.):

> "The doctrine of sovereign immunity precludes a plaintiff from bringing a *Bivens* action against a federal agency, *See FDIC v. Meyer,* 510 U.S. 471, 484-86 114, --- S.Ct. ----, ---- - ---- ----, --- L.Ed.2d ----, ---- - ---- ----(1994). Suits brought against federal officials in their official capacities are to be treated as suits against the

upon which Plaintiff is still proceeding in this case, he states that he "sues all the Defendants in both their individual and official capacities." (Doc. 1, p. 13).  As relief, Plaintiff seeks "Two Hundred Million, ($2000,000.00) dollars in compensatory damages" and "Two Hundred Million, ($2000,000.00) dollars in punitive damages." (*Id*.).  Plaintiff's claim for monetary damages against all Defendants in their official capacities should be dismissed.  Further, Plaintiff's requests for specific amounts of monetary damages against Defendants in their individual capacities should be stricken from the Complaint.  *See Velentzas v. U.S.A.*, Civil No. 07-1255, M.D. Pa. (J. Jones, Order November 6, 2007).

Plaintiff's relief requests for "Two Hundred Million, ($2000,000.00) dollars in compensatory damages" and "Two Hundred Million, ($2000,000.00) dollars in punitive damages" (*Id*.) should be stricken from his Complaint.  Since Plaintiff seeks unliquidated damages, he cannot claim a specific sum of relief.  Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's requests for specific monetary damages should be stricken from his Complaint.  *See Stuckey v. Ross*, Civil No. 05-2354,

---

employing government agency. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (cited with approval in *Christy v. Pa. Turnpike Comm'n,* 54 F.3d 1140, 1143 n. 3 (3d Cir.1995)). As a result, a *Bivens* suit brought against an individual federal official acting in his official capacity is barred by the doctrine of sovereign immunity, *See also Chinchello v. Fenton,* 805 F.2d 126, 130 n. 4 (3d Cir.1986) (affirming district court's conclusion that sovereign immunity barred an official-capacity *Bivens* claim), and the court lacks jurisdiction to hear the claim. *See Kabakjian v. United States,* 267 F.3d 208, 211 (3d Cir.2001) (holding that district courts lack jurisdiction to hear claims brought against the United States unless Congress has explicitly waived sovereign immunity)."

13

M.D. Pa., 1-9-06 Order, J. McClure; *Velentzas, supra*.

Accordingly, we shall recommend that Plaintiff's August 30, 2007 "Motion to File Jointer (sic) of Persons Needed For Just Adjudication Pursuant to [Fed. R. Civ. P.] 19(a)" **(Doc. 177)** be denied. We will also recommend that Plaintiff's claim for monetary damages against Defendants in their official capacities should be dismissed. (Doc. 1, p. 13). Further, we will recommend that Plaintiff's requests for specific amounts of monetary damages against Defendants in their individual capacities should be stricken from the Complaint. (*Id*.).

Next, we consider Defendants' Motion to Dismiss and for Summary Judgment, and Plaintiff's second Summary Judgment Motion.

As stated, the Court denied, without prejudice, Plaintiff's first Summary Judgment Motion (Doc. 147) on July 3, 2007, since the Court found Plaintiff's Motion to be premature at the stage of the case when it was filed, *i.e.* the Defendants did not even respond to Plaintiff's Complaint and his remaining two exhausted claims. Also, at that time, the Court had not even considered Plaintiff's Motion to Amend his pleading, since it was not ripe for disposition. (Doc. 162).

Subsequently, the District Court denied Plaintiff's Appeal of our Order denying his Motion to Amend his Complaint (Doc. 168), and Defendants responded to Plaintiff's Complaint by filing their Motion to Dismiss and for Summary Judgment on July 3, 2007. (Doc. 163).[13] Plaintiff then filed his second Summary Judgment Motion on July 12, 2007, along with his SMF and support Brief. (Docs. 165, 166, and 167). Defendants filed their Brief in opposition to Plaintiff's Summary

---

13. As indicated below, Defendants still have not filed their Answer to Plaintiff's Complaint, and the pleadings are not yet closed. Also, Plaintiff's request for reconsideration of the Court's Order denying his Motion to Amend his Complaint has been denied. (Doc. 183).

Judgment Motion on July 27, 2007.  (Doc. 171).   On September 4, 2007, Plaintiff filed his opposition Brief to Defendants' July 3, 2007 Motion to Dismiss and for Summary Judgment. (Doc. 179).  Also, on September 4, 2007, Plaintiff filed a second SMF, presumably in response to Defendants' SMF, which is basically an identical copy of his first SMF, except for the last page and Relief Sought section.  (Doc. 180).

Since Plaintiff and Defendants have submitted their Local Rule 56.1, M.D. Pa., SMF's (Plaintiff, Docs. 166 and 180, and Defendants, Doc. 170), as well as evidence to support their SMF's (Plaintiff, Docs. 167 and 179, and Defendants, Doc. 169-2), we shall first consider what material facts are undisputed.[14]

As stated, there are two remaining (exhausted) claims in this case, namely Plaintiff's "First Amendment confiscation of legal materials claim and his Fourteenth Amendment due process claim regarding his March 22, 2001 disciplinary hearing.  (Rec. Doc. 125)."  (Doc. 162, p. 2, District Court's July 3, 2007 Memorandum and Order).  As noted above, there are nine Defendants named in Plaintiff's Complaint.  (Doc. 1).

Defendants filed their six-page (¶'s 1.-33.) Statement of Material Facts ("SMF") in support of their Motion to Dismiss and their Summary Judgment Motion.  (Doc. 170).  Plaintiff has filed his own SMF in support of his second Summary Judgment Motion, as well as his response to Defendants' SMF's, which is essentially an identical copy of his original SMF. (Docs. 166 and 180).  Plaintiff's two SMF's are identical, except his later filed copy he dated August 30, 2007 has

---

14. As indicated below, both of Plaintiff's SMF's are identical except for the last pages of them. (Docs. 166 and 180).

amended ¶'s 57. and 58. from his original SMF.  The Relief Sought section of both SMF's are the same expect for the paragraph numbering.[15]  Both parties have relied upon evidence in the record to support their SMF's and responses thereto.  We shall use Plaintiff's latest SMF, Doc. 180.

To the extent that Defendants' SMF's regarding Plaintiff's allegations in his Complaint  (Doc. 170, pp. 1-3, ¶'s 1.-12.) are not disputed by Plaintiff in his SMF, we shall consider them as unopposed.   Therefore, we accept the stated facts contained in Defendants' SMF's that are supported by the record and that are not disputed by Plaintiff's SMF, and we will adopt them as our own herein.  *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (Under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).[16]

However, we only accept, for present purposes, the SMF's of Defendants (Doc. 170, pp. 1-3, ¶'s 1.-12.) which pertain to Plaintiff's allegations in his Complaint relating to his two remaining claims.  We do not rely upon the SMF's of Defendants regarding their request for summary judgment.  We shall recommend that, insofar as both Plaintiff and Defendants seek summary

---

15. Under Local Rule 56.1, there is no provision for a relief request section. Under Fed. R. Civ. P. 8(a), a pleading has a relief request section.  A SMF is not a pleading.  Further, in his SMF's, Plaintiff reiterates that he sues all Defendants in both their individual and official capacities and that he seeks two hundred million dollars in compensatory and punitive damages from Defendants. (Doc. 166, ¶'s 56.-59., and Doc. 180, ¶'s 58.-61.).  As stated above, Plaintiff cannot sue   Defendants for monetary damages in their official capacities and this request should be dismissed.  (Doc. 1, p. 13).  Further, Plaintiff's requests for specific amounts of monetary damages against Defendants in their individual capacities should be stricken from the Complaint.  *See Velentzas, supra*.

16. *See also Paranich* District Court case at 286 F. Supp. 2d at 447, n. 3.

judgment in this case, both requests be denied without prejudice as premature.[17]

The initial SMF's of both parties relate to the facts concerning Plaintiff's two remaining claims in this case (*i.e.* First Amendment claim and Fourteenth Amendment claim), and are largely taken from Plaintiff's Complaint.  However, to the extent that Plaintiff's ¶'s 1.-11. of his SMF (Doc. 180) are merely his statements of jurisdiction and the parties, we do not consider them herein as they are not proper SMF's.[18]  We note that the seven Defendants identified in Plaintiff's SMF (Doc. 180, ¶'s 3.-9.) are not all of the same nine Defendants he named in his Complaint.  (Doc. 1, pp. 1- 10).  The nine Defendants originally named in Plaintiff's Complaint are: Michael Zenk, Warden; K. Bittenbinder, Captain; David M. Rardin, Regional Director; Kathleen Hawk Sawyer, Director; Lieutenant Sanchez; Lieutenant Litchard; George Watson, Facility Foreman; Terry Bam, Facility Foreman; and Robin Gregg, Executive Assistant.  (Doc. 1, p. 1).  The seven Defendants identified in Plaintiff's SMF (Doc. 180, ¶'s 3.-9.) are Zenk, Bittenbinder, Litchard, Gregg, Bryan, Rardin, and Watts.  We also note that, while Plaintiff identifies Bryan and Watts as Defendants in his SMF (Doc. 180, ¶'s 7. and 9.), as discussed above, neither of these two BOP officials have been added as Defendants in this case, and Plaintiff's repeated attempts to add them have been denied by this

---

17. We note that the majority of Defendants' SMF's that are under the category of Facts for Summary Judgment Motion (Doc. 170, pp. 3-6, ¶'s 13.-33.), appear to relate to the Plaintiff's Fourteenth Amendment due process claim regarding the March 22, 2001 DHO hearing.  As discussed below, we shall recommend that Defendants' Motion to Dismiss this claim as *Heck*-barred be granted.  Thus, many of Defendants' SMF's relating to their Summary Judgment Motion are moot if our recommendation regarding Plaintiff's Fourteenth Amendment claim is adopted by the District Court.

18. We also do not consider Plaintiff's ¶'s 58.-61. of his SMF (Doc. 180) since they are not statements of material facts and only repeat Plaintiff's requests for relief.

Court.   In fact, if Plaintiff believed that Watts and Bryan were still joined as Defendants by virtue

of the District Court's vacated April 1, 2003 Order, there would be no need for him to have filed

his recent Motion to Join them as Defendants. (Doc. 177).   Plaintiff's reference to Bryan and Watts

as Defendants in his SMF is deliberately misleading.   It also appears as though Plaintiff is proceeding

only as against Defendants Zenk, Bittenbinder, Litchard, Gregg and Rardin.   (Doc. 180, ¶'s 3.-9.).

Regardless, we shall discuss all Defendants named in Plaintiff's Complaint herein.

The   following facts pertain to Plaintiff's First Amendment confiscation of legal materials

claim (*i.e.* First Amendment denial of access to the court claim).

Plaintiff alleges that the nine named Defendants in his Complaint "did order and cause a

shakedown to be conducted in Unit 2A, cell 214, on January 26, 2001, which went against policy

according to regulations, whereby confiscated all Plaintiff's legal documents as well as evidence to

support Plaintiff's position in the courts." (Doc. 1, p. 2, ¶ 1).[19]   (*See also* Doc. 170, ¶'s 1.-2. and

Doc.. 180, ¶'s 12.-14.).   Plaintiff avers that after the shakedown, "no personal property record was

---

19.  We note that alleged violations of prison policies does not rise to the level of a
Constitutional claim.   To the extent that Plaintiff seeks to rely upon BOP policy and regulations
to support his First Amendment claim and  to show that Defendants violated his Constitutional
rights by authorizing a shakedown and not issuing any incident reports or itemized lists of
property taken, in violation of BOP policy (Doc. 1, p. 2, ¶ 1 and ¶ 19), violations of BOP
policies and regulations do not rise to the level of Constitutional claims.
    A policy manual does not have the force of law and does not rise to the level of a
regulation.  *Mercy Catholic Med. Ctr. v. Thompson,* 380 F.Supp. 142, 154 (3d Cir. 2004).  Recently,
the Third Circuit clearly stated "that the agency interpretive guidelines do not give rise to the
level of a regulation and do not have the effect of law." *Id.*  Further, a violation of an internal
policy does not automatically rise to the level of a Constitutional violation.  *Whitcraft v.
Township of Cherry Hill,* 974 F.Supp. 392, 398 (D.N.J. 1996)(citing  *Daniels v. Williams,* 474
U.S. 327, 332-33, 106 S.Ct. 662, 665-66, 88 L.Ed.2d 662 (1986); *Edwards v. Baer,* 863 F.2d
606, 608 (8th Cir.1988); *Jones v. Chieffo,* 833 F.Supp. 498, 505-506 (E.D.P.a.1993)).

given with an itemized list of everything that was confiscated." (Doc. 1, p. 2, ¶ 1). Plaintiff avers that he was targeted since he was the only inmate to lose legal work in the January 26, 2001 shakedown even though other inmates in Unit 2A had a lot of legal documents. (*Id.*). Plaintiff avers that some of the legal materials confiscated from his cell consisted of evidence to support his position in the courts. Plaintiff basically alleges that Defendant Zenk ordered the shakedown in question and caused the confiscation of his legal documents without any itemized list provided. Plaintiff alleges that Defendants Bittenbinder and Litchard were in charge of the shakedown, and that they conspired with Zenk to confiscate his legal documents. Plaintiff alleges that Bittenbinder directed the shakedown and that Defendant Litchard participated in the confiscation of his legal materials. (Doc. 1, ¶'s 2-4, 17-29).[20]

---

20. In later filings, Plaintiff indicates that all of his legal documents were confiscated during the January 26, 2001 shakedown, including the evidence he had gathered for his FTCA suit regarding his ownership dispute with the government over personal property worth in excess of $300,000.00. (*See* Doc. 182, p. 1, ¶ 1.). In his later filings, Plaintiff also states that:

> The prison officials who directed the confiscation of these legal materials were Captain Kevin Bittenbinder and Lieutenant Craig Litchard. Later that day, Mr. Walker was "called to the lieutenant's office". When he arrived, he saw his legal materials "sitting by the copying machine in the lieutenant's office". Mr. Walker was told that he "could not have that much [sic] legal documents", and that he had to get rid of all materials that he did not use on "a daily basis". At the end of the meeting Captain Bittenbinder gave Mr. Walker an incomplete set of the legal materials that had been confiscated earlier that day and orderd (sic) him to eliminate some". When Mr. Walker returned to his cell, he discovered that many of his most important legal documents were missing.

> Mr. Walker never recovered the missing legal materials, which he believes were destroyed by Captain Bittenbinder and Lieutenant Litchard.

Plaintiff also avers that, despite the confiscation of his voluminous legal documents, no incident reports were issued, no investigation reports were issued, and no personal property record with an itemized list of his confiscated property was provided as required by BOP policy and regulations.   (Doc. 1, ¶'s 19 and 29).[21]   Plaintiff states that he later recovered many of the confiscated items, but that he never received a complete file of his legal materials.  As a result, Plaintiff states that he was not able to prove, by documentary evidence, that he was the lawful owner of more than $300,000 worth of property at issue in an FTCA action against the government, and that judgment was entered against him in the case.  (Doc. 180, ¶'s 18.-20.).[22]

---

Without these legal materials, Mr. Walker "was unable to prove he was the lawful owner" of the property at issue in his FTCA Case, and Judgement [SIC] was entered against him" in that Case. (*Id.*).

(*Id.*, pp. 1-2).

21.  Defendants' evidence indicates that a list of confiscated property, *i.e.* Confiscation of Contraband Form, was prepared after the January 26, 2001 shakedown. (Doc. 169-2, Ex. B, Att. 1).  The property confiscated from Plaintiff included four bags of legal paperwork. (*Id.*). Regardless, we will still recommend that Defendants' Motion to Dismiss and Motion for Summary Judgment be denied with respect to Plaintiff's First Amendment claim since, as noted above, the basis for this claim is not the alleged lack of a list of confiscated property in violation of BOP policy.

22.  The above stated allegations contained in both Plaintiff's Complaint and SMF are not material facts in this case.  Rather, they are merely the allegations relating to Plaintiff's First Amendment claim.  As stated, Defendants filed a joint Motion to Dismiss and a Summary Judgment Motion.  The allegations of Plaintiff with respect to his claims are relevant to Defendants' portion of their Motion that is styled as a Motion to Dismiss.  Defendants correctly label Plaintiff's allegations as opposed to undisputed material facts in their SMF (Doc. 170, pp. 1-2). However, Plaintiff improperly labels his allegations as "Facts." (Doc. 180, pp. 2-3).

The allegations regarding Plaintiff's second remaining claim, Fourteenth Amendment due process claim relating to his March 22, 2001 DHO hearing are now discussed below.

Plaintiff avers that Defendant Bittenbinder organized and headed a March 8, 2001 shakedown (9:00-9:30 a.m.) in order to plant a weapon in Plaintiff's property "in retaliation towards Plaintiff filing against the Administration for the January 26, 2001 shake-down that was conducted against policy and regulations." (Doc. 1, ¶ 23). Plaintiff avers that Defendant Zenk caused the weapon to be planted in his property on March 8, 2001, during the morning shakedown, and he avers that it was then discovered in the second March 8, 2001 evening shakedown at 6:00 p.m. (Id., ¶ 13). Plaintiff alleges that Defendant Sanchez, as further retaliation against him, was the investigating officer of the incident report written against Plaintiff for the weapon that was found in Plaintiff's property (during March 8, 2001 evening shakedown at 6:00 p.m.), and that Sanchez made false statements in the report stating that Plaintiff said he [Plaintiff] secured his locker before he went to work on March 8, 2001, in an attempt to contradict Plaintiff's statement to the DHO that his locker was left open. Plaintiff avers that Defendant Sanchez falsified the report in order to secure a guilty finding against him at the March 22, 2001 DHO hearing. (Doc. 1, ¶ 32).[23]

With respect to the involvement of Defendant Hawk Sawyer (former BOP Director) and Plaintiff's remaining two claims, we agree with Defendants (Doc. 170, ¶ 12.) and find that Plaintiff

23. Obviously, if Plaintiff's locker was secured before he went to work on March 8, 2001, then there would be less credibility to Plaintiff's claim that the weapon was planted in his legal work during the March 8, 2001 shakedown.

merely avers that she "is the Respondeat Superior, and is liable for the wrongful acts of her servants, and a principal for those of her agent." (Doc. 1, ¶ 46). In his SMF (Doc. 180, ¶ 22.), Plaintiff also states that Defendants Zenk and Hawk Sawyer were placed on notice of the misconduct by Defendants Bittenbinder and Litchard, and that they failed to take any corrective actions, which contributed to and caused his property to be destroyed. As discussed below, *respondeat superior* is not a basis to hold a federal official liable in a § 1331 *Bivens* action. Thus, we will recommend that Defendant Hawk Sawyer be dismissed from this case.

We also find that, since Plaintiff's two remaining claims only allege the personal involvement of Defendants Zenk, Bittenbinder, Litchard, and Sanchez, the other named Defendants, *i.e.* Rardin, Hawk Sawyer, Watson, Bam, and Gregg, should all be dismissed.

Indeed, in his SMF (Doc. 180, ¶'s 3.-9.), Plaintiff seems to recognize, in part, that his remaining claims mainly relate to only Zenk, Bittenbinder and Litchard. However, as stated, Plaintiff also attempts to indicate in his SMF that Bryan and Watts are Defendants. Plaintiff notes in his Brief in support of his Summary Judgment Motion that the Court granted his Motion for Joinder of Bryan and Watts as necessary parties. (Doc. 167, p. 1, n. 1). Plaintiff refers to his Docs. 82 and 84. Plaintiff also appears to refer to the April 1, 2003 Order of the District Court. (Doc. 94). However, the stated Order was entered before this case was dismissed. Also, after Plaintiff's appeal to the Third Circuit, only his First Amendment and Fourteenth Amendment exhausted claims remained in this case. Thus, after remand, Plaintiff's previous attempt to join Bryan and Watts as Defendants was no longer binding since Plaintiff would have to show that they were necessary only

to his two remaining claims and not to his claims which were dismissed.[24]   Indeed, Plaintiff himself recognized that his prior Joinder Motion (Doc. 84) and the Court's pre-remand April 1, 2003 Order (Doc. 94) were no longer case dispositive, since the District Court vacated its April 1, 2003 Order and granted Defendants' Motion to Dismiss this case.  (Doc. 109).  This is precisely why Plaintiff filed his recent Motion to Join Bryan and Watts as Defendants pursuant to Rule 19(a) on August 30, 2007. (Doc. 177).[25]   Thus, Plaintiff's continuous reliance upon a vacated Order of the Court and his continuous reference to Bryan and Watts as Defendants in this case (Docs. 167 and 180) are simply incorrect.   Further, as the District Court recently re-asserted, "Walker's unexhausted claims were dismissed by this Court."  (Doc. 183, p. 4).

Also, as we discussed above, we have found that Bryan and Watts were not involved with respect to Plaintiff's two remaining claims, and thus we found Bryan and Watts not to be necessary parties.

Plaintiff indicates in his SMF that Gregg and Rardin are still viable Defendants (Doc. 180, ¶'s 6. and 8.), but, as discussed above, we do not find any allegations against these two Defendants with respect to the remaining First Amendment claim and Fourteenth Amendment due process claim.  Thus, we shall recommend that Defendants Rardin, Hawk Sawyer, Watson, Bam, and Gregg

---

24. As discussed above, we find that Plaintiff's Motion to Join Bryan and Watts as Defendants merely asserts that they are necessary parties to his now dismissed claims.

25. We disagree with Plaintiff that the District Court's April 1, 2003 Order is "in full force." (Doc. 179, p. 9).  The District Court vacated its April 1, 2003 Order.  The District Court's July 31, 2003 (Doc. 113) Order which granted Defendants' original Motion to Dismiss both Plaintiff's unexhausted and exhausted claims was only reversed with respect to Plaintiff's two exhausted claims.  (Docs. 124 & 183).

all be dismissed since we do not find any of their personal involvement alleged with respect to the remaining First Amendment confiscation of legal materials claim and the Fourteenth Amendment due process claim.

   **2.     *Defendants' Motion to Dismiss (Doc. 163)***

   We next consider Defendants' Motion to Dismiss. (Doc. 163). The relevant allegations of Plaintiff's Complaint regarding his remaining two claims have been discussed above. We also find that Defendants' SMF succinctly states Plaintiff's relevant allegations. (Doc. 170, pp. 1-3, ¶'s 1.-12.). Plaintiff also states his two claims, in part, on page 6 of his opposition Brief to Defendants' dispositive Motion. (Doc. 179, p. 6).

   Initially, as stated, we disagree with Plaintiff that the District Court's April 1, 2003 Order is "in full force" and that Defendants are now barred by the doctrine of *res judicata* from asserting any argument in their present dispositive Motion that was already denied by the Court in the April 2003 Order. (Doc. 179, pp. 9-10). As repeatedly stated, only Plaintiff's two exhausted claims remain in this case. (Doc. 183, p. 4). The District Court specifically re-opened this case and remanded it to the undersigned only with respect to Plaintiff's claims that were exhausted, namely, his claim regarding "confiscation of his legal materials and his claim regarding his March 22, 2001 Disciplinary Hearing Officer [DHO] hearing." (Doc. 124, p. 2). We do not find that *res judicata* principles  bar Defendants from asserting any of their instant arguments in support of their dispositive Motion.

   We disagree with Plaintiff (Doc. 179, pp. 9-10), that he has established the applicability of the doctrine of claim preclusion under the standard set in *Selkridge v. United of Omaha Life Ins. Co.*,

360 F. 3d 155, 172 (3d Cir. 2004).[26]  There has been no final judgment on the merits in this case.

Nor shall we address Plaintiff's claim raised in his Brief (Doc. 179, pp. 13-14) that Defendants

falsified prison records in May 2001 or June 2001 in order to show that he withdrew his BP-9 on

March 28, 2001, and "falsified records to mislead the court into believing that there were only two

issue's (sic) namely First Amendment confiscation of legal Materials claims (sic), and his Fourteenth

Amendment due process claim regarding his March 22, 2001 disciplinary hearing." (Doc. 179, p.

14).  As repeatedly stated, there are only two claims remaining in this case.  (Doc. 124, p. 2 & Doc.

183, p. 4).

A.      *Defendants Hawk Sawyer, Rardin, Watson, Bam and Gregg*

Defendants argue that Defendants Hawk Sawyer, Rardin, Watson, Bam and Gregg should

all be dismissed since Plaintiff fails to allege that they were personally involved with respect to his

two remaining claims, and that the supervisory Defendants are only sued based on *respondeat*

*superior.*  (Doc. 169, pp. 8, 12-15).  We agree.

As stated above, with respect to the involvement of Defendant Hawk Sawyer (former BOP

Director) regarding Plaintiff's remaining two claims, we agree with Defendants (Doc. 170, ¶12. and

Doc. 169, p. 5) and find that Plaintiff merely avers that  she "is the Respondeat Superior, and is

---

26.  The Court in *Selkridge,* 360 F. 3d at 172, stated, "[f]or claim preclusion to apply, there must
have been "[1] a final judgment on the merits in [2] a prior suit involving the same parties or
their privies, and [3] a subsequent suit based on the same cause of action." *General Elec. Co. v.
Deutz Ag,* 270 F.3d 144, 158 (3d Cir.2001). "If these three factors are present, a claim that was
or could have been raised previously must be dismissed as precluded." *CoreStates Bank, N.A. v.
Huls America, Inc.,* 176 F.3d 187, 194 (3d Cir.1999).

liable for the wrongful acts of her servants, and a principal for those of her agent." (Doc. 1, p. 9, ¶ 46). In his SMF (Doc. 180, ¶ 22.), Plaintiff also states that Defendants Zenk and Hawk Sawyer were placed on notice of the misconduct by Defendants Bittenbinder and Litchard, and that they failed to take any corrective actions, which contributed to and caused his property to be destroyed. (*See also* Doc. 167, p. 14). The law is clear that *respondeat superior* is not a basis to hold a federal official liable in a § 1331 *Bivens*[27] action.

Under *Bivens*, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor under *Bivens, supra*. Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978). A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply. *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992). In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa.

---

27. *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).
    As noted above, Plaintiff's case is a *Bivens* action, as he seeks monetary damages from federal officials for alleged violations of his Constitutional rights. Doc. 1, p. 13.

1992); *Sharpe*, 2007 WL 1098964, *3.[28]

It is well established that personal liability in a civil rights action cannot be imposed upon a prison   official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976).   It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights   case and that a complaint must allege such personal involvement.  *Id.*  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons.  *Id.*

Plaintiff avers that Defendant Hawk Sawyer is responsible for all of the alleged acts by Defendants since it was her responsibility "to provide a carefully managed system of policy and proceedures (sic) and ensure that a well-trained and carefully supervised staff properly use their authority and maintain a high level of professionalism."  (Doc. 1, p. 9, ¶ 47).  As discussed in detail

---

28.  Recently, the Third Circuit in *Banks v. Roberts*, C.A. No. 07-2793, slip op. p. 2, n. 1, 2007 WL 3096585, * 1, n. 1 (3d Cir. 10-19-07) (Non-Precedential) noted that "A '*Bivens* action' is a commonly used phrase for describing a judicially created remedy allowing individuals to seek damages for unconstitutional conduct by federal officials.  This constitutional tort theory was set out in *Bivens* . . . "

above, we have found that Plaintiff's two remaining claims  only allege the personal involvement of Defendants Zenk, Bittenbinder, Litchard, and Sanchez.[29]  We have found, based on Plaintiff's pleading detailed above, that the other named Defendants in this case, *i.e.* Rardin, Hawk Sawyer, Watson, Bam, and Gregg, are all subject to dismissal since they are not alleged to have been personally involved in either of Plaintiff's remaining claims.  *See Sutton v. Rasheed, 323 F. 3d 236, 249 (3d Cir. 2003); Rode, supra.*  Thus, we shall recommend that Defendants Rardin, Hawk Sawyer, Watson, Bam, and Gregg, all be dismissed.[30]

> B.      Plaintiff's Fourteenth Amendment Due Process Claim
>         Challenging his March 22, 2001 DHO Hearing

Defendants argue that Plaintiff's Fourteenth Amendment due process claim challenging  his March 22, 2001 DHO hearing should be dismissed since it is *Heck*-barred.  (Doc. 169, pp. 8-10). Plaintiff alleges that Defendants conspired to plant a weapon in his locker on March 8, 2001, in retaliation for his earlier grievance about the January 2001 shakedown, and that Defendants made false statements at his DHO hearing on March 22, 2001, that he possessed a weapon on March 8, 2001.  Plaintiff states that Defendants' alleged conduct was done to convict him on the disciplinary charge, namely, the prohibited act of possession of a weapon (Code 104), and that this lead to the

---

29.  Since we have detailed Plaintiff's allegations against Defendants with respect to his two remaining claims, we shall not restate them.

30.  We have not applied the summary judgment standard with respect to Defendants' argument that Defendants Rardin, Hawk Sawyer, Watson, Bam, and Gregg are all subject to dismissal since they are not alleged to have been personally involved in either of Plaintiff's remaining claims.  Rather, we have used the standard for a motion to dismiss under Rule 12(b)(6) with respect to the stated argument.

imposition of disciplinary sanctions against him.  (Doc. 179, p. 6, pp. 13-14).[31]  Plaintiff was

sanctioned to 60 days in disciplinary segregation and 41 days of disallowed good conduct time, as

well as 6 months loss of commissary privileges.  (Doc. 169-2, Ex. C. Att. 2).   Defendants contend

that since Plaintiff was undisputedly sanctioned, in part, to 41 days of disallowed good conduct

time, the duration of his confinement is at issue with respect to his Fourteenth Amendment due

process claim.  (Doc. 169, p. 9).  Defendants state that Plaintiff has not claimed or shown that this

disciplinary sanction has been reversed or overturned through the grant of a habeas corpus petition

under 28 U.S.C. §2241.  (*Id*.).  Defendants state that a favorable ruling regarding Plaintiff's

Fourteenth Amendment claim challenging his March 22, 2001 DHO hearing would necessarily

imply that his loss of good conduct time was invalid, and therefore, this claim of Plaintiff is not

cognizable under *Bivens*.  (*Id*., pp. 9-10).

   Recently, this Court in *Supples v. Burda*, Civil No.  07-1560,  M.D.  Pa.,  10-26-07

Memorandum (J. Caldwell), slip op. pp. 6-7, stated:

> In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383
> (1994), the Supreme Court clarified the interplay between habeas and
> civil-rights claims.  The Court ruled that a section 1983 claim for
> damages does not accrue "for allegedly unconstitutional conviction
> or imprisonment, or for other harm caused by actions whose
> unlawfulness would render a conviction or sentence invalid," until the
> plaintiff proves that the "conviction or sentence has been reversed
> on direct appeal, expunged by executive order, declared invalid by
> a state tribunal authorized to make such determination, or called
> into question by a federal court's issuance of a writ of habeas
> corpus."  *Id.* at 486-87, 114 S.Ct. at 2372, 129 L.Ed.2d at 394
> (footnote omitted).

---

31. The undisputed records regarding the March 8, 2001 Incident Report issued against Plaintiff
and the DHO hearing of March 22, 2001 are found at Doc. 169-2, Ex. C, Atts. 1-2.

*Heck* has been extended to requests for declaratory and
injunctive relief.  *See Edwards v. Balisok*, 520 U.S. 641, 117
S.Ct. 1584, 137 L.Ed.2d 906 (1997) (*Heck* bars a section 1983
action seeking damages and declaratory relief which challenges
a prison disciplinary hearing forfeiting good-time credits).  As
the Court explained in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82,
125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (emphasis in original):
"a state prisoner's § 1983 action is barred (absent prior
invalidation) - <u>no matter the relief sought </u>(damages or equitable
relief), no matter the target of the prisoner's suit (state conduct
leading to conviction or internal prison proceedings)  - *if* success
in that action would necessarily demonstrate the invalidity of the
confinement or its duration."  As the Third Circuit has summarized
the holding of *Heck*: "where success in a § 1983 action would
implicitly call into question the validity of conviction or duration
of sentence, the plaintiff must first achieve favorable termination of
his available state or federal habeas remedies to challenge the
underlying conviction or sentence." *Williams, supra*, 453 F.3d at 177
(Emphasis added).

As Defendants point out (Doc. 169, pp. 9-10), a ruling in Plaintiff's favor with respect to his

Fourteenth Amendment claim regarding his March 22, 2001 DHO hearing, that the weapon was

planted in his locker among his legal documents and that Defendants falsely stated that he

possessed a weapon on March 8, 2001, would necessarily imply that Plaintiff's sanction of 41 days

lost good conduct time was invalid.  In fact, Plaintiff states that he believes the DHO's March 22,

2001 decision was not corroborated by other evidence, except for the false statements of

Defendants.  (Doc. 167, p. 15).  Defendants rely upon *Leamer* to support their argument. (Doc.

169, pp. 9-10).

The Third Circuit in *Leamer v. Fauver*, 288 F. 3d 532, 542 (3d Cir. 2002), stated:

whenever the challenge ultimately attacks the 'core of habeas' -- the
validity of the continued conviction or the fact or length of the
sentence -- a challenge, however denominated and <u>regardless</u>

30

of the relief sought, must be brought by way of a habeas corpus
petition.  Conversely, when the challenge is to a condition of
confinement such that a finding in plaintiff's favor would not
alter his sentence or undo his conviction, an action under § 1983
is appropriate. (Emphasis added).

The Third Circuit Court of Appeals in *Williams v. Consovoy*, 453 F. 3d 173, 177 (3d Cir.

2006), stated:

In <u>Heck</u>, the Supreme Court held that where success in a § 1983
action would implicitly call into question the validity of conviction or duration
of sentence, the plaintiff must first achieve favorable termination of his available
state or federal habeas remedies to challenge the underlying conviction
or sentence. Considering <u>Heck</u> and summarizing the interplay between habeas
and § 1983 claims, the Supreme Court recently explained that,

"a state prisoner's § 1983 action is barred (absent prior invalidation)-
no matter the relief sought (damages or equitable relief), no matter the
target of the prisoner's suit (state conduct leading to conviction or
internal prison proceedings)- *if* success in that action would necessarily
demonstrate the invalidity of the confinement or its duration."

*Wilkinson v. Dotson,* 544 U.S. 74, 81-82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005)
(emphasis in original).

As the *Williams* Court indicated, 453 F. 3d at 177, the threshold questions is whether our

Plaintiff's success on his DHO hearing claim, *i.e.* a weapon was planted in his locker on March 8,

2001, and that during the March 22, 2001 DHO hearing, Defendants falsely stated that Plaintiff

possessed a weapon on March 8, 2001, in order to secure his conviction of the Code 104 offense

charged  (Doc. 179, p. 6), would "necessarily demonstrate" the invalidity of the DHO's March 22,

2001 decision finding Plaintiff guilty of the charged offense.  We find that the answer to the stated

question is "yes," since Plaintiff's success on his present DHO hearing claim, that he did not possess

a weapon on March 8, 2001, and that the DHO relied upon false statements that he did possess

a weapon, would necessarily call into question the validity of the DHO's March 22, 2001 decision finding that Plaintiff possessed a weapon on March 8, 2001.  In fact, in his Brief, Doc. 167, p. 14, Plaintiff appears to concede that his prison term has been extended, and he states that his prison release date has been altered due to the DHO's March 22, 2001 disciplinary sanction of disallowing 41 days of good conduct time, and that "this action has struck the heart of Plaintiff's prison sentence by holding him back for an extra 41 days past the date of his scheduled release ... ."

Thus, we agree with Defendants and find that *Heck* bars Plaintiff's Fourteenth Amendment DHO hearing claim he raises in this case, and that this exhausted claim is not cognizable in this *Bivens* action.  *Id.*  It is clear that a favorable decision in this §1331case with respect to Plaintiff's DHO hearing Fourteenth Amendment due process claim would certainly call into question the validity of the DHO's March 22, 2001 decision finding Plaintiff guilty of possessing a weapon on March 8, 2001.  However, since the DHO's March 22, 2001 decision has not been found to be invalid through a habeas corpus petition under §2241, Plaintiff cannot attack the DHO's decision *via* this *Bivens* action.  Thus, we will recommend that the District Court dismiss Plaintiff's Fourteenth Amendment due process claim.  *See Gilles v. Davis*, 427 F. 3d 197 (3d Cir. 2005).[32]

> C.    *First Amendment Claim of Confiscation of Legal Materials and Denial of Access to the Courts*

Plaintiff's only other remaining claim in this case is his First Amendment claim of confiscation of legal materials and denial of access to the courts.  Defendants ague that this claim should be

---

32.  Since we find that Defendant Sanchez's alleged personal involvement in this case is limited to Plaintiff's Fourteenth Amendment due process claim, we recommend that Defendant Sanchez be dismissed from this case.

dismissed since they are entitled to qualified immunity with respect to it.  (Doc. 169, pp. 10-12).

As stated above, Plaintiff alleges that Defendants "did order and cause a shakedown to be conducted in Unit 2A, cell 214, on January 26, 2001, which went against policy according to regulations, whereby confiscated all Plaintiff's legal documents as well as evidence to support Plaintiff's position in the courts." (Doc. 1, p. 2, ¶ 1).[33]  (*See also* Doc. 170, ¶'s 1.-2. and Doc. 180, ¶'s 12.-14.).  Plaintiff avers that after the shakedown, "no personal property record was given with an itemized list of everything that was confiscated." (Doc. 1, p. 2, ¶ 1).  Plaintiff avers that he was targeted since he was the only inmate to lose legal work in the January 26, 2001 shakedown even though other inmates in Unit 2A had a lot of legal documents.  (*Id*.).  Plaintiff avers that some of the legal materials confiscated from his cell consisted of evidence to support his position in the courts, *i.e.* his claim of property ownership in his FTCA action.  Plaintiff alleges that Defendant Zenk ordered the shakedown in question and caused the confiscation of his legal documents without any itemized list provided, and that Defendants Bittenbinder and Litchard were in charge of the shakedown.  Plaintiff alleges that Defendants Bittenbinder and Litchard conspired with Zenk to confiscate his legal documents, and that Bittenbinder directed the shakedown and Litchard participated in the confiscation of his legal materials.  (Doc. 1, ¶'s 2-4, 17-29 ).  As noted, in later filings in this case, Plaintiff indicates that all of his legal documents were confiscated during the

---

33.  We have noted above that alleged violations of prison  policies does not raise to the level of a Constitutional claim.  *See Whitcraft v. Township of Cherry Hill,* 974 F.Supp. 392, 398 (D.N.J. 1996)(citing  *Daniels v. Williams,* 474 U.S. 327, 332-33, 106 S.Ct. 662, 665-66, 88 L.Ed.2d 662 (1986); *Edwards v. Baer,* 863 F.2d 606, 608 (8th Cir.1988); *Jones v. Chieffo,* 833 F.Supp. 498, 505-506 (E.D.P.a.1993)).

January 26, 2001 shakedown, including the evidence he had gathered for his FTCA suit regarding his ownership dispute with the government over personal property worth in excess of $300,000.00. (*See e.g.* Doc. 182, p. 1, ¶ 1.).  Plaintiff claims that as a result of the confiscation of his legal documents, he could not prove that he owned disputed property in his FTCA action, and that judgment was entered against him in his FTCA action.

Only Defendants Zenk, Bittenbinder and Litchard are alleged to have any personal involvement with respect to Plaintiff's First Amendment claim.  Defendants argue that Plaintiff fails to establish that the alleged conduct of these Defendants violated any of his Constitutional rights. (Doc. 169, p. 11).  Defendants state that Plaintiff did not state any Constitutional claim regarding his allegations that procedures were not properly followed, and that he was not given an itemized list of his confiscated property from his cell during the shakedown.  Defendants contend that Plaintiff's allegations regarding his confiscated legal materials do not rise to the level of a Constitutional violation.  Thus, Defendants contend that they are entitled to qualified immunity with respect to Plaintiff's First Amendment claim.

The Court in *Brockington v. City of Philadelphia*, 354 F.Supp.2d 563, 567-68 (E.D.Pa.2005), stated as follows:

> The doctrine of qualified immunity provides that "law enforcement officers acting within their professional capacity are generally immune from trial 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Wilson v. Russo,* 212 F.3d 781, 786 (3d Cir.2000) (quoting *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). The qualified immunity defense involves a two-step analysis.
>
> First, a court must "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Wilson,* 212 F.3d at 786

34

(citation omitted). Second, if plaintiff has alleged such a deprivation, a court should "proceed to determine whether that right was clearly established at the time of the alleged violation." *Id.* This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Curley v. Klem,* 298 F.3d 271, 277 (3d Cir.2002) (quoting *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). A constitutional right is established if it is sufficiently clear and well-defined so that "a reasonable official would understand that what he is doing violates that right." *Carswell v. Borough of Homestead,* 381 F.3d 235, 242 (3d Cir.2004) (citations omitted). Even if a reasonable official would so understand, the defendant may still be shielded from liability if he made a reasonable mistake as to what the law requires. *Id.* Although it is important to resolve qualified immunity questions at the earliest possible stages of litigation, the importance of resolving qualified immunity questions early "is in tension with the reality that factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right." *Curley v. Klem,* 298 F.3d 271, 277-78 (3d Cir.2002). A decision as to qualified immunity is "premature when there are unresolved   disputes of historical facts relevant to the immunity analysis." *Id.* at 278.

Further, "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ' *Showers v. Spangler,* 182 F.3d 165, 171 (quoting *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 1699-1700, 143 L.Ed.2d 818 (1999) and *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed .2d 396 (1982)).

When addressing qualified immunity claims, the court must   proceed in a  two prong analysis.  *Id.; Sharrar v. Felsing,* 128 F.3d 810, 826 (3d Cir.1997); *see also Rouse v. Plantier,* 182 F.3d 192 (3d Cir.1999) (setting forth the same general standard for analyzing qualified immunity, but in a three step inquiry). First, the court  must determine if the  conduct alleged by the plaintiff violated a clearly established constitutional right.  *Id.; see also Johnson v. Horn,* 150 F.3d 276, 286 (3d Cir.1998). If so, the court must then determine if the unlawfulness of the conduct  would have been apparent to an objectively reasonable official. *Id.* Thus,"whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citation omitted).

Therefore, "[u]nless plaintiff's allegations state a claim of a violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *P.F. v. Mendres,* 21 F.Supp.2d 476 (D.N.J.1998) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 n. 6, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

In liberally construing Plaintiff's confiscation of legal material claim, we find that Plaintiff has raised a First Amendment denial of access to courts claim. We do not find that Defendants Zenk, Bittenbinder and Litchard are entitled to qualified immunity with respect to this claim since Plaintiff had a clearly established Constitutional right to access to the courts during January 2001, and since Plaintiff claims that the confiscation of his legal materials directly caused him to lose his FTCA court action. We find that Plaintiff has claimed that he was denied access to the court by Defendants' alleged conduct, and that he has alleged an injury regarding his denial of access to the courts claim.

It is well established that prisoners have a constitutional due process right of access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). However, in order to prevail on such a claim, it is necessary to allege an actual injury -- an instance in which the Plaintiff was actually denied access to the courts. *Lewis v. Casey*, 518 U.S. 343, 116 S. Ct. 2163 (1996); *Peterkin v. Jeffes*, 855 F.2d 1021, 1041 (3d Cir. 1988), *citing Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir. 1982); *Kershner v. Mazurkiewicz*, 670 F.2d 440, 444 (3d Cir. 1982).

Since Plaintiff has alleged an actual injury or adverse action with respect to his First Amendment access to courts claim against the stated three (3) Defendants, *i.e.* that judgment was entered against him in his FTCA action, and since Plaintiff had a clearly established First Amendment right to access to the courts, we shall recommend that Plaintiff's First Amendment claim be allowed to proceed as against Defendants Zenk, Bittenbinder and Litchard. Thus, we shall

36

recommend that Defendants' Motion to Dismiss Plaintiff's First Amendment denial of access to court claim regarding the January 2001 confiscation of his legal materials from his cell during a shakedown, as against Defendants Zenk, Bittenbinder and Litchard, based on Defendants' claim of qualified immunity, be denied.

However, we do not find any conspiracy claim stated by Plaintiff. Plaintiff alleges that Defendant Bittenbinder conspired with Warden Zenk "to confiscate all of Plaintiff's legal documents as well as evidence to support Plaintiff's position in pending legal matters. (Doc. 1, p. 5, ¶ 18).

The Third Circuit in *Jones v. Maher*, Appeal No. 04-3993 (3d Cir. 2005), slip op. p. 5, stated that broad and conclusory allegations in a conspiracy claim are insufficient to state a viable claim. (Citation omitted). Also, the United States District Court for the Middle District of Pennsylvania, in *Flanagan v. Shively*, 783 F. Supp. 922, 928-29 (M.D. Pa. 1992), *aff'd*. 980 F. 2d 722 (3d Cir. 1992), *cert. denied* 510 U.S. 829 (1993), stated as follows:

> Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred. In *Waller v. Butkovich,* 584 F.Supp. 909, 931 (D.C.N.C. 1984), the district court outlined the pleading requirements in a conspiracy action.

>> In most cases, a bare conclusory allegation of 'conspiracy' or 'concerted action' will not suffice. The plaintiffs must expressly allege an agreement or make averments of 'communication, consultation, cooperation, or command' from which such an agreement can be inferred . . . (Citation omitted.) . . . Allegations that the defendants' actions combined to injure the plaintiffs are not a sufficient basis from which to imply a conspiracy . . . (Citation omitted.)
>> Additionally, the plaintiffs must make 'specific factual

allegations connecting the defendant to the injury' . . .
(Citations omitted.) . . .

The Plaintiff fails to state a conspiracy claim against Defendants Bittenbinder and Zenk regarding his confiscation of legal materials claim, in that he does not allege an agreement between these specific Defendants to deliberately confiscate his legal materials in order to thwart his FTCA action.  We disagree with Plaintiff (Doc. 179, pp. 14-15) that he has stated a conspiracy claim. Plaintiff does not even argue that the purpose of the alleged conspiracy relates to one of the two remaining claims in this case.  (*Id*.).  Rather, Plaintiff argues that "the Defendants fraudulently withdrew Plaintiffs' (sic) BP-9 without consent after several attempts were made to cajole Plaintiff and retaliations from pursuing his administrative remedy."  (*Id*., p. 14).  This alleged conspiracy, which fails to state a cognizable Constitutional claim, does not relate to Plaintiff's two remaining claims in this case, *i.e.* Fourteenth Amendment due process claim regarding his March 22, 2001 DHO hearing and his First Amendment denial of access to courts claim regarding the January 2001 shakedown of his cell and confiscation of his legal materials preventing him from pursuing his FTCA action.  (*See* Doc. 167, p. 14).

We find that Plaintiff's bare conclusory allegations of conspiracy against Defendants Bittenbinder and Zenk (Doc. 1, p. 5, ¶ 18)  are inadequate to allege a conspiracy claim.  We also find that the alleged conspiracy does not relate to either of the remaining claims in this case, and shall recommend that the conspiracy claim be dismissed.  *See Flanagan, supra*.

Thus, we shall recommend that Defendants' Motion to Dismiss and for Summary Judgment (Doc. 163) be granted in part and denied in part, as discussed above.  We shall recommend that the supervisory Defendants be dismissed for failure to state a claim against them, that Plaintiff's

Fourteenth Amendment due process claim regarding his March 22, 2001 DHO hearing be dismissed as *Heck*-barred, and that Plaintiff be allowed to proceed only with respect to his First Amendment denial of access to courts claim as against Defendants Zenk, Bittenbinder and Litchard.

Next, we consider Plaintiff's second Summary Judgment Motion. Defendants argue that Plaintiff's second Summary Judgment Motion, filed less than two months after his first Summary Judgment Motion, is again completely premature. (Doc. 171, p. 6).[34] To date, Defendants have not filed their Answer to Plaintiff's Complaint, and no discovery has been conducted. After numerous filings in this case, and extensions of time, Defendants filed their Motion to Dismiss and for Summary Judgment in response to the Complaint. (Doc. 163). It is not yet clear as to which of Plaintiff's two remaining claims will proceed and which Defendants will still be parties. If our instant Report and Recommendation is adopted by the District Court, then there will be one claim remaining (*i.e.* the First Amendment confiscation of legal materials and denial of access to courts claim) and three Defendants remaining, namely, Zenk, Bittenbinder and Litchard.

We again agree with Defendants that, based on the stated procedural history of this case, Plaintiff's second Summary Judgment Motion is still premature and should be denied without prejudice to re-file it after remaining Defendants answer the remaining claim or claims in this case and after discovery is conducted. We disagree with Plaintiff (Doc. 175, p. 7) that his second Summary Judgment Motion is not premature since he filed it after the pleadings closed and that he

---

34. Defendants note that, if the Court finds that Plaintiff's second Summary Judgment Motion is not premature, then they request the Court to afford them an opportunity to address the merits of his summary judgment arguments. (Doc. 171, p. 7, n. 3). Since we agree with Defendants that Plaintiff's second Summary Judgment Motion is still premature, as was his first Summary Judgment Motion, we do not recommend the granting of this request of Defendants.

filed it since no discovery was initiated.    Plaintiff also incorrectly states that he filed his second Summary Judgment Motion after Defendants' Answer to the two remaining claims.  (*Id.*, pp. 7-8). Defendants have not yet filed their Answer to Plaintiff's remaining claims.  Rather, they filed their July 3, 2007 Motion to Dismiss the remaining claims and Motion for entry of Summary Judgment. (Doc. 163).   As this Court recently noted in *Plaster v. Beard*, Civil No. 06-1655, M.D. Pa., 10-18-07 Memorandum (J. Munley), p. 2, n. 4, motions to dismiss are not responsive pleadings. The pleadings are not closed, and the Court has not yet issued an Order setting deadlines for discovery and for dispositive motions in this case.

As stated, it is still not even clear, at this point, which of Plaintiff's two claims will proceed, if any, and which Defendants will remain in the case.  We do agree with Plaintiff insofar as he indicates in his Brief in support of his Summary Judgment Motion (Doc. 167, p. 16) that he has stated a First Amendment claim of denial of access to the court as against Defendants Zenk, Bittenbinder and Litchard.  But we disagree with Plaintiff that, at this stage of the case, he has shown that he is entitled to summary judgment as against these three Defendants on his First Amendment claim.

Thus, we again find that Plaintiff's second Summary Judgment Motion (Doc. 165) is premature, and we shall recommend that it be denied without prejudice to re-file it at the proper time.[35]

---

35.  In fact, in our prior Report and Recommendation of June 8, 2007, in which we recommended that Plaintiff's first Summary Judgment Motion be denied, we stated that it should be denied without prejudice "to re-file it at the appropriate time."  (Doc. 159, p. 5).  We do not find that Plaintiff has re-filed his Summary Judgment Motion at the appropriate time.

Therefore, we shall recommend that Plaintiff's second Motion for Summary Judgment (Doc. 165) be denied without prejudice to re-file it at the appropriate time.[36]

## V.   Recommendation.

Based on the forgoing, we respectfully recommend that Plaintiff's Motion for Summary Judgment **(Doc. 165)** be denied without prejudice as premature.  We recommend that Defendants' Motion to Dismiss and for Summary Judgment **(Doc. 163)** be granted in part and denied in part, as stated below.  We recommend that Defendants' Motion, to the extent that it is for Summary Judgment, be denied without prejudice to re-file it.  **(Doc. 163).**  We recommend that Plaintiff's August 30, 2007 "Motion to File Jointer (sic) of Persons Needed For Just Adjudication Pursuant to [Fed. R. Civ. P.]  19(a)" **(Doc. 177)** be denied.  We also recommend that Plaintiff's claim for monetary damages against Defendants in their official capacities should be dismissed.  (Doc. 1, p. 13).  Further, we  recommend that Plaintiff's requests  for specific  amounts of monetary damages against Defendants in their individual capacities should be stricken from the Complaint.  (Doc. 1, p. 13).

Moreover, we recommend that Defendants' Motion to Dismiss **(Doc. 163)** be granted with respect to  the following Defendants for Plaintiff's failure to state their personal involvement regarding his two remaining claims, namely Rardin, Hawk Sawyer, Watson, Bam, and Gregg.  We recommend that Defendants' Motion to Dismiss be granted with respect to Plaintiff's Fourteenth Amendment  due  process  claim  regarding  his  March  22,  2001  disciplinary  hearing,  and  we

---

36.  We note that we will also recommend that Defendants' Motion, to the extent that it is for Summary Judgment, be denied without prejudice.

41

recommend that Defendant Sanchez be dismissed.  We recommend that Defendants' Motion to Dismiss Plaintiff's First Amendment denial of access to court claim regarding the January 2001 confiscation of his legal materials from his cell during a shakedown, as against Defendants Zenk, Bittenbinder and Litchard, be denied.  We recommend that Defendants' Motion to Dismiss Plaintiff's conspiracy claim against Defendants Bittenbinder and Zenk regarding the  confiscation of legal materials claim be granted.

Finally, we recommend that Plaintiff's case be remanded to the undersigned only with respect to Plaintiff's First Amendment denial of access to court claim regarding the January 2001 confiscation of his legal materials from his cell during a shakedown, as against Defendants Zenk, Bittenbinder and Litchard.[37]

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: November 15, 2007**

---

37. If the District Court adopts our Report and Recommendation, we will direct the three remaining Defendants to file their Answer to Plaintiff's Complaint regarding his First Amendment claim, and we will then issue a Scheduling Order setting deadlines for discovery and dispositive motions.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY A. WALKER,                    :        CIVIL ACTION NO. **4:CV-01-1644**
                                      :
             Plaintiff                :        (Judge Jones)
                                      :
        v.                            :        (Magistrate Judge Blewitt)
                                      :
MICHAEL ZENK, Warden, et al.,         :
                                      :
             Defendants               :

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **November 15, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

43

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                             s/ Thomas M. BLewitt
                                             THOMAS M. BLEWITT
                                             United States Magistrate Judge


**Dated: November 15, 2007**